# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), *et al.*,<br><br>*Plaintiffs*,<br><br>vs.<br><br>ELISABETH "BETSY" D. DEVOS, in her official capacity as the United States Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | Case No. 1:20-cv-01996 (DLF) |

## DECLARATION OF MASANA MAILLIARD IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTIVE RELIEF, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

1. My name is Masana Mailliard. I am the Interim Chief Financial Officer for the DeKalb County School District ("DeKalb County" or "DCSD"). I have been with DCSD for nine years. Prior to my current role as Interim CFO, I was Budget Manager for DCSD. Before that, I was the Assistant Director for Audits under Title I and Title II of the Elementary and Secondary Education Act of 1965 ("ESEA"), School Improvement Grants, and Race to the Top Audits for DCSD. I have extensive experience in compliance with federal programs at the school-district level. I have a bachelor's degree in Accounting and Finance, and I am currently completing a master's degree in Forensic Accounting, from Florida Atlantic University. DCSD is the local education agency ("LEA") for schools in DeKalb County, Georgia outside the city limits of Atlanta and Decatur, Georgia, and is a plaintiff in this lawsuit against Secretary of Education Elisabeth "Betsy" D. DeVos (the "Secretary") and the United States Department of

1

Education (the "Department") challenging the Department's interim final rule issued July 1, 2020 entitled *CARES Act Programs; Equitable Services to Students and Teachers in Non-Public Schools*, 85 Fed. Reg. 39,479 (the "Rule"), and corresponding federal regulations, *see generally* 34 C.F.R. § 76.665.

2. DCSD's principal address is 1701 Mountain Industrial Boulevard, Stone Mountain, Georgia 30083. DCSD's telephone number is (678) 676-1200.

3. I have compiled the information in the statements set forth below through personal knowledge, consultation with my colleagues and other DCSD personnel, and review of relevant documents and databases. I have also familiarized myself with the Rule and its impact on DCSD's schools and students.

4. DCSD is the third largest LEA in the state of Georgia. DCSD has 137 public schools and a total enrollment of approximately 102,000 students. The DCSD student population is approximately 63.7% Black, 16.7% Hispanic/Latinx, 10.9% White, and 6.4% Asian. Among DCSD students, 72.2% qualify for free or reduced-price lunch, 15.5% are students with limited English proficiency, and 11% are students with disabilities.

5. In fiscal year 2020, DCSD had 110 Title I schools. The total enrollment in DCSD's Title I schools was 84,562 students.

6. There are 6,178 private school students who reside in DCSD's jurisdiction. Only approximately 785 private school students are low-income for the purposes of calculating the set-aside for equitable services pursuant to Title I, as specified in Section 1117 of the Elementary and Secondary Education Act of 1965 ("ESEA").

7. DCSD relies very heavily on state and local funding for its operating budget. However, funding from the State has been slashed by over $54 million due to the COVID-19

pandemic. Furthermore, DCSD expects additional declines in the collection rate of local property tax revenues due to pandemic-related economic decline and unemployment.

8. DCSD needs increased funding of approximately $2 to 5 million, in addition to the CARES Act funding it anticipates receiving, to effectively respond to the COVID-19 pandemic in the coming school year. This additional funding would help to reduce "calendar reduction days" where school-based staff and some central office essential staff will be furloughed, as well as supporting chrome book devices and connectivity.

9. DCSD anticipates applying for and receiving $33,585,162 from the Coronavirus Aid, Relief, and Economic Security ("CARES") Act's Elementary and Secondary Schools Emergency Relief ("ESSER") Fund. DCSD has not yet received guidance from the State of Georgia on how much GEER funding DCSD can expect to receive.

10. On July 9, 2020, the Georgia Department of Education ("GDE"), the State educational agency ("SEA") for the State of Georgia, issued guidance to LEAs in the State directing them to spend the CARES Act's ESSER funds in all of their schools, and to allocate a portion of CARES Act funds for equitable services for private school students based on total private-school enrollment, rather than based on low-income private-school enrollment—the latter of which is how the proportional share is normally calculated under Title I, Section 1117 of the ESEA. In other words, the State has directed LEAs, including DCSD, to adopt the Rule's enrollment-based formula for calculating the proportional share of CARES Act funds for equitable services for private-school students. *See generally* 34 C.F.R. § 76.665(c)(1)(ii). Because DCSD has been forced into this option, DCSD's public schools will divert $2,062,129 of ESSER funds – approximately $1.4 to $1.6 million more than they would set aside under

3

Section 1117 of the ESEA, which was incorporated into Section 18005 of the CARES Act, to private schools.

11.     DCSD intends to use CARES Act funds throughout the district for expenditures such as personal protective equipment ("PPE"), cleaning supplies, internet access and software for remote learning (including Chromebook devices and mobile hot-spots), and other supports for students in need in the district. Most importantly, the district is in desperate need of increased funding for school nutrition services to provide meals to needy students during the pandemic. As discussed above, over 70% of DCSD's public-school students are eligible for free or reduced-price lunch. With public schools closed across DeKalb County, CARES Act funding to provide meals that needy public-school students depend upon DCSD for each day is critical. Because DCSD lost over $54 million in state and local funding sources as a result of the pandemic, DCSD's budget is stretched thinner than ever, and many of the aforementioned costs will be difficult, if not impossible, to cover in the coming school year without the full measure of CARES Act funds.

12.     Indeed, the loss of approximately $1.4 to 1.6 million in CARES Act funds will make it impossible for DCSD to safely reopen its public schools this coming school year. DCSD plans to begin the school year with remote learning, and continuously assess the risks and ability to mitigate them before moving to a hybrid remote and in-person option or to return to in-person full time. Not only can the district not adequately plan to restructure and sanitize its school buildings to limit the spread of the coronavirus, but it also cannot meet the needs of vulnerable students in an online learning environment with such limited resources. Because the budget of the district is already stretched too thin by statewide budget cuts, DCSD will also lose crucial services and personnel such as support programs for disengaged students, programs for students

needing social and emotional help, school counselors, and technical support specialists for each school building.

13.     The loss of these services and staff will have a detrimental impact on DCSD and its public-school students while a decision on the merits in this litigation is pending. Public-school students in DeKalb County have been out of the traditional classroom for months. So much education has been lost. Even though teachers and administrators worked hard to make distance learning successful, it is impossible to replace face-to-face learning, especially for younger students. DCSD also lost so much time simply by making an abrupt and immediate transition to distance-learning that DCSD was unprepared to make in March 2020. Delaying resources and continuing to force districts to operate without knowing the resources to which they will have access will have detrimental effects on DCSD's ability to operate and, more importantly, on the students' ability to learn safely and effectively in the coming school year. DCSD must be able to begin operating in the impending school year as efficiently as possible to keep public-school students engaged for as long as possible. However, our financial ability to ensure proper sanitation, PPE, and other infrastructure to mitigate health and safety risks is in jeopardy.

14.     DCSD also faces novel administrative burdens because of the Rule's new methods for calculating the proportional share of CARES Act funds to be allocated for the provision of equitable services to private-school students. Pursuant to the Rule, DCSD must provide equitable services to an increased number of students attending an increased number of geographically disparate private schools. Some examples of the administrative burdens DCSD will incur are the processing of expenditures through the district's financial system and the

provision of equitable services themselves, and the documentation and continuous monitoring of the private schools' implementation and reporting of the CARES Act funds.

15. If DCSD does not receive the money it is entitled to under the CARES Act imminently, DCSD will likely have to spend money from our balance reserve fund to cover the costs associated with starting the school year during a pandemic. As our overall budget faced significant cuts as a result of the $54 million in lost state revenue, we have had to make cuts in our spending, including reducing the number of days our staff work, and we have not had funds to spend on technology or services for sanitation as needed. Our balance reserve fund is also needed for an even worsening economic position over the next year. These are costs that DCSD is incurring *now*, and as such, DCSD needs the monies that Congress intended DCSD to have *now*. Waiting for those monies is impracticable and hurts DCSD's fiscal health, which will lead to a precarious position in the future for DCSD. An enormous challenge is our ability to retain our critical educators, counselors, and other staff, and to not reduce staff work days as we face revenue shortfalls.

16. If the Department of Education had not published the Rule, DCSD would have been free to increase the amount it can spend on school nutrition meal services. DCSD has been struggling throughout the most recent school year, and into the summer, trying to determine how to keep public-school students fed, as so many of them rely on funding in order to avoid going hungry. The $1.4 to 1.6 million DCSD will lose to private school students under the Department's Rule was supposed to feed DCSD's most vulnerable students. DCSD also planned to spend the additional money on more Chromebook devices and mobile hot-spots for students who lack devices and internet access, reduce the days that staff may have to be furloughed

through calendar reduction days, and provide more for PPE, sanitation, and other COVID-19 related expenditures.

17. I declare under penalty of perjury under that the foregoing is true and correct.

Executed on August 11, 2020.

_____
Masana Mailliard